**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 47439**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, January 2020 Term |
| | ) | |
| v. | ) | Opinion Filed: June 11, 2020 |
| | ) | |
| QUENTIN NAVA, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. George A. Southworth, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant Quentin Nava. Brian R. Dickson argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Kale D. Gans argued.

_____

STEGNER, Justice.

Quentin Nava appeals from the judgment of conviction entered against him for one count of lewd and lascivious conduct and one count of sex abuse. He argues that the district court erred when it denied his motion to sever the two counts. Nava argues that the similarities between the two counts did not constitute a common scheme or plan as to justify joinder of the two charges. The Idaho Court of Appeals agreed, and vacated Nava's judgment of conviction. The State petitioned for review, which this Court granted. For the reasons set out in this opinion, we affirm Nava's judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The State charged Nava with one count of lewd and lascivious conduct and one count of sexual abuse. The charges arose from an approximately two-day period in July 2016 when Nava was staying in the home of a female friend, her twelve-year-old daughter, who will be referred to by the initials J.R.R., her twelve-year-old niece, who will be referred to by the initials J.L.R., as well as other friends and relatives who were staying at the woman's house.

1

On the first night, purportedly during the early morning hours of July 15, 2016,[1] J.R.R. awoke to find Nava touching, rubbing, and pushing on her vagina outside of her underwear. On July 16, 2016, during the early morning hours, J.L.R. awoke to the sound of Nava unbuttoning her pants. Nava then slid his hand down her pants and rubbed her buttocks. J.L.R. ran upstairs and locked herself in the bathroom. After about fifteen minutes, she left the bathroom and woke her aunt and informed her about what Nava had done. The woman called law enforcement regarding J.L.R.'s allegation. During the investigation into J.L.R.'s claims, J.R.R. told her mother that Nava had also touched her inappropriately. That allegation was also reported to law enforcement.

Following its investigation, the State charged Nava in a single complaint alleging one count of lewd conduct with a minor for the assault against J.R.R. and one count of sexual abuse of a child under the age of sixteen for the assault against J.L.R. A grand jury returned a single indictment that included both charges.

Months later, Nava filed a "Motion to Sever for Improper Joinder Pursuant to ICR 8(a)." Nava argued that joinder had been improper because the similarities between the two counts were too unremarkable to demonstrate a common scheme or plan. During the hearing on the motion, the State argued that it intended to introduce evidence that Nava's actions had demonstrated similar "grooming behavior" towards both J.R.R. and J.L.R., such as buying them drinks from a coffee shop and making inappropriate comments about their physical appearances.

The district court denied Nava's motion to sever the two charges. The district court found that the two counts contained numerous similarities: (1) the assaults occurred in the same room of the same house; (2) the assaults occurred within a forty-eight hour period; (3) both victims were twelve-year-old girls; (4) they were both initially asleep when the assaults occurred; and (5) Nava had been grooming both girls. Accordingly, the district court found that sufficient similarities existed between the two counts to conclude that joinder was proper.

---

[1] There appears to be some uncertainty as to the date that Nava allegedly assaulted J.R.R. The State's superseding indictment alleged that Nava touched J.R.R. "on or about the 15th day of July 2016." The law enforcement officer's probable cause affidavit stated that the assaults occurred in the early morning hours of July 16 and 17, 2016. During trial, J.R.R. testified that Nava touched her "maybe close to a week" before he touched J.L.R. However, when questioned by the defense counsel regarding the assaults, J.R.R. seemed to indicate that the assaults against her and J.L.R. happened on successive nights.

In analyzing whether Nava would suffer prejudice from the joinder, the district court noted that evidence of the other act, i.e., the assault of one girl, would be admissible at the trial of the assault on the other girl under I.R.E. 404(b). Additionally, the district court noted some concern about Nava having a separate defense for the allegation made by J.R.R. Nava alleged that J.R.R.'s allegation may have been tainted by hearing about J.L.R.'s allegation. However, the district court found that the prejudice relating to the presentation of a separate defense on one of the charges did not substantially outweigh the probative value of the similarities of the offenses and evidence that Nava had the opportunity to assault the girls. Accordingly, the district court denied Nava's motion to sever the charges.

Following a jury trial, Nava was convicted of both counts. Following the jury's verdict, Nava admitted to a pair of sentencing enhancements.[2] The district court imposed an aggregate sentence of forty years, with eighteen years fixed.

Nava timely appealed. The Court of Appeals heard his appeal in *State v. Nava*, No. 45463, 2019 WL 2060933 (Idaho Ct. App. May 9, 2019). The Court of Appeals held that the district court erred by denying Nava's motion to sever because the similarities between the cases were insufficient to demonstrate a common scheme or plan because the similarities were "unremarkable." *Id.* at *4. Further, the Court of Appeals held that the error was not harmless because the prejudicial effect of the evidence outweighed any probative value the evidence had to show that Nava had an opportunity to abuse the two young girls. *Id.* at *5–6. Accordingly, the Court of Appeals vacated Nava's judgment of conviction and remanded the case. *Id.* at *6.

The State petitioned for review, which this Court granted.

## II. ANALYSIS

### A. Clarifying Motions to Join or Sever and Standards of Review.

On appeal, Nava argues that there is confusion in this Court's case law regarding the applicable standard of review used by an appellate court when reviewing a decision concerning the joinder or severance of charges. To resolve this confusion, Nava contends that district court decisions concerning I.C.R. 8 *and* I.C.R. 14 motions should be reviewed *de novo* because both

---

[2] These sentencing enhancements were alleged in Parts II and III of the criminal complaint and indictment. The allegations were that Nava had previously been convicted of statutory rape and failing to register as a sex offender. These allegations were made in the absence of the grand jury and were not presented to the jury at trial. Prior to admitting to the prior convictions, Nava waived his right to have a jury determine whether he had been previously convicted of these crimes.

decisions require the same basic analysis. Nava argues that applying different standards of review for the two rules gives the State an unfair advantage and allows the State to "manipulate the scope of review" on appeal. Nava bases this argument on the proposition that, to limit the scope of review on appeal, the State could file charges together in its original complaint—as was done here—the propriety of which could only be challenged through an I.C.R. 14 motion to sever, which is reviewable under an abuse of discretion standard. Conversely, if charges are brought separately and the State later moves to join them through an I.C.R. 8 motion, the propriety of this joinder would be reviewed *de novo*. The standard of review for an abuse of discretion results in this Court giving deference to the trial court. A *de novo* standard does not afford the trial court any deference.

The State disagrees that there is any confusion in the standard of review. Instead, the State argues that there is one standard for reviewing the propriety of joinder under I.C.R. 8, and another for reviewing an order on a motion to sever under I.C.R. 14.

1.  Idaho law provides two independent grounds to sever charges.

Nava spends significant time in his briefing arguing that rulings on motions filed under I.C.R. 8 *and* motions filed under I.C.R. 14 should be reviewed under the same standard. However, this argument lies on a faulty premise. Nava appears to make this argument believing that an I.C.R. 14 motion for relief from prejudicial joinder was the exclusive remedy available to him to object to improper joinder. Nava is incorrect.

Idaho law provides for *two* independent grounds upon which a defendant may seek to have the charges against him severed.[3] Pursuant to I.C.R. 8(a), the State may seek to join two or more charges in a single charging document where the charges "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." I.C.R. 8(a). Idaho law permits a defendant to challenge the State's joining of two offenses by arguing that the requirements of I.C.R. 8 have not been met, e.g., the charges do not constitute a common scheme or plan. *See State v. Field*, 144 Idaho 559, 565, 165 P.3d 273, 279 (2007); *State v. Anderson*, 138 Idaho 359, 361, 63 P.3d 485, 487 (Ct. App. 2003).

In contrast, I.C.R. 14 provides a different procedural mechanism. Pursuant to I.C.R. 14, a defendant may move to sever charges, even if the requirements of I.C.R. 8 have been satisfied, if

---

[3] This was first announced in an unpublished opinion by the Idaho Court of Appeals. *See State v. Bower*, No. 41336, 2015 WL 654467, at *2 (Idaho Ct. App. Feb. 13, 2015).

4

the joinder of those charges prejudiced the defendant. *See State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985) (italics added) ("Parties *properly joined* under I.C.R. 8(b) may be severed under I.C.R. 14 if it appears that joint trial would be prejudicial[.]"); *Anderson*, 138 Idaho at 361 n.1, 63 P.3d at 487 n.1 (italics in original) ("Rule 14 permits a trial court to sever defendants, or grant separate trials of counts, if a party is prejudiced by an *otherwise permissible joinder* under Rule 8(a)."). Generally, to get to the question of whether joinder was prejudicial, it is "presume[d] joinder was proper in the first place." *Field*, 144 Idaho at 564–65, 165 P.3d at 278–79 (citation omitted).

In sum, a defendant may file a motion to sever charges he contends were improperly joined under I.C.R. 8. Consequently, a motion to sever is *not* limited to I.C.R. 14. Separately, I.C.R. 14 allows a defendant to sever the charges if the joinder of the charges was *prejudicial*, regardless of whether joinder was *proper* under I.C.R. 8.

2. Propriety of joinder pursuant to I.C.R. 8 is reviewed *de novo* and prejudicial joinder under I.C.R. 14 is reviewed for an abuse of discretion.

The standard of review utilized by the appellate courts depends on what type of motion is appealed by the defendant. If the defendant is appealing from a ruling on a motion to sever based on I.C.R. 8 (misjoinder), this Court exercises free review. *Field*, 144 Idaho at 564, 165 P.3d at 278 (citation omitted). In contrast, if a defendant is appealing from a motion to sever based on I.C.R. 14 (prejudicial joinder), this Court uses an abuse of discretion standard of review. *Id.*

Nava contends that *State v. Orellana-Castro*, 158 Idaho 757, 351 P.3d 1215 (2015), created confusion as to the relevant standard of review. We agree. *Orellana-Castro* stated,

> [w]hen the defendant moves for severance under Criminal Rule 14, the alleged prejudice is often that evidence of the defendant's conduct which would be admissible in the prosecution of one offense would not be admissible under Evidence Rule 404(b) in the prosecution of the other offense if it were tried separately. In that circumstance, the analysis is the same as to whether the offenses are part of a common scheme or plan permitting joinder under Criminal Rule 8(a) and whether the defendant would be prejudiced by joinder because the offenses were not part of a common scheme or plan under Evidence Rule 404(b). Both of those decisions are reviewed on appeal under an abuse of discretion standard. *State v. Pepcorn*, 152 Idaho 678, 690, 273 P.3d 1271, 1283 (2012) (admissibility of evidence under Evidence Rule 404(b)); *State v. Dambrell*, 120 Idaho 532, 537, 817 P.2d 646, 651 (1991) (denial of motion to sever).

*Id.* at 760, 351 P.3d at 1218. This paragraph appears to create a standard of review wholly separate from the general standard of review applied to rulings on motions to sever based on

5

improper joinder when the claim of joinder is based on the "common scheme or plan" theory. *See id.* It provides that in the instance that joinder is based on the fact that the charges constitute a common scheme or plan, the ruling is reviewed under an abuse of discretion standard because it requires the same analysis as a ruling concerning I.R.E. 404(b).

We now hold that the standard created in *Orellana-Castro* is not appropriate. Accordingly, we disavow *Orellana-Castro* to the extent that it creates a singular standard of review instead of the two standards of review articulated in *Field.* In *Field*, we stated,

> [w]hether a court improperly joined offenses pursuant to I.C.R. 8 is a question of law, over which this Court exercises free review. In contrast, an abuse of discretion standard is applied when reviewing the denial of a motion to sever joinder pursuant to I.C.R. 14; however, that rule presumes joinder was proper in the first place. As we are reviewing the propriety of the initial joinder, we exercise free review.

*Field*, 144 Idaho at 564–65, 165 P.3d at 278–79 (footnote omitted) (internal citations omitted).

We uphold the standards of review articulated in *Field.* Therefore, a ruling on a motion under I.C.R. 8, even if based on the common scheme or plan theory, is reviewed *de novo.*[4] The standard of review should not be altered just because the analysis for another rule is similar and reviewed under a different standard. Rather, a proper and complete analysis should analyze each rule separately. To hold otherwise would confuse the relevant criminal rules and standards of review.

Additionally, I.C.R. 14 considers much more than whether the evidence could come in under I.R.E. 404(b). In analyzing whether joinder is prejudicial, Idaho courts have considered three potential sources of prejudice when addressing a motion to sever based on I.C.R. 14:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

---

[4] Today's decision in no way changes the standard of review for I.R.E. 404(b) evidence. The standard articulated in *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009), is the standard to be used to determine the admissibility of Rule 404(b) evidence. The holding today is limited to rulings on motions made under I.C.R. 8 and I.C.R. 14.

*State v. Williams*, 163 Idaho 285, 293, 411 P.3d 1186, 1194 (Ct. App. 2018) (quoting *State v. Abel*, 104 Idaho 865, 867–68, 664 P.2d 772, 774–75 (1983)). Therefore, combining the analyses for I.C.R. 8 and I.C.R. 14 as was done by the Court in *Orellana-Castro* would foreclose arguments that a party would have under either rule.

Consequently, Rules 8 and 14 must be analyzed separately with their proper standards of review. Going forward, this Court will employ the following analysis: This Court will first analyze whether joinder was permissible under I.C.R. 8. This Court exercises free review over this determination. *Field*, 144 Idaho at 564, 165 P.3d at 278 (citation omitted). If joinder is determined to be proper, this Court then turns to whether that proper joinder was prejudicial to either party.[5] This Court reviews this determination for an abuse of discretion. *Id.*

3. Nava primarily argues that joinder was improper pursuant to the language of I.C.R. 8; accordingly, the decision will be reviewed *de novo*.

Nava spends significant time in his briefing regarding the application of I.C.R. 14, all while arguing that joinder was *improper* as opposed to *prejudicial*. The primary arguments, both below and on appeal, focus on whether joinder was proper. For example, Nava filed a "Motion to Sever for Improper Joinder Pursuant to ICR 8(a)." Nava's arguments in his memorandum in support of his motion to sever focused on whether joinder was proper pursuant to I.C.R. 8. Additionally, Nava's arguments to the district court during the motion hearing focused on whether joinder was proper pursuant to I.C.R. 8. Also during the hearing, the State argued both that joinder was not prejudicial under I.C.R. 14 *and* that joinder was proper under I.C.R. 8. The district court concluded, "the closeness in time and other circumstances leads the Court to conclude that *joinder is proper* in this case." The district court's conclusion of the propriety of joinder necessarily was a finding under I.C.R. 8. Accordingly, Nava's motion for severance was clearly tied to I.C.R. 8 and propriety of joinder, not limited to an I.C.R. 14 motion to sever for prejudicial joinder. Finally, Nava's citation to I.C.R. 14 on appeal is in large part due to the confusion caused by this Court's opinion in *Orellana-Castro*. As a result, this Court will exercise free review to determine whether the joinder of the charges was proper.

**B.** **The district court did not err in denying Nava's motion to sever because the two charges contained sufficient common characteristics to constitute a common scheme or plan.**

---

[5] This assumes that the issues for both Rule 8 and Rule 14 were properly preserved for appeal.

7

The district court ruled that joinder was proper because the charges shared many common characteristics. The district court stated,

> [Nava] is alleged to have inappropriately touched two young girls, both 12 [years] of age, either one or two nights apart in the same room as he was sleeping. I think it was in the living room watching TV. There were other people around.
> They're connected as to place, same room in the same house, time, just a day or two apart, victim type, both 12-year-old girls, opportunity. They were both sleeping in the same room the defendant was staying. Evidently they had fallen asleep there. And additionally, . . . it appears that there was some previous instances of grooming in at least what the victims felt were perhaps inappropriate comments regarding their appearance, on one of them their breasts.

The district court concluded that these similarities were sufficient to find that joinder was proper.

On appeal, Nava argues that the district court erred because the two offenses were not part of a common scheme or plan. Nava argues that this Court and the Court of Appeals have previously rejected joinder under circumstances similar to those found by the district court as "too unremarkable" to constitute a common scheme or plan. The State argues that the similarities found by the district court were sufficient to constitute a common scheme or plan. Further, the State argues that the evidence that Nava engaged in grooming behavior was sufficient to demonstrate a common scheme or plan. However, Nava contends that the "grooming behavior" alleged by the State was not the continued and escalating behavior that this Court typically requires to find a common scheme or plan.

Idaho Criminal Rule 8(a) provides,

> [t]wo or more offenses may be charged on the same complaint, indictment or information if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

I.C.R. 8. As explained previously, "[w]hether a court improperly joined offenses pursuant to I.C.R. 8 is a question of law, over which this Court exercises free review." *Field*, 144 Idaho at 564, 165 P.3d at 278 (citations omitted). In reviewing whether joinder was proper, appellate courts may consider what was alleged by the State, not merely what the proof at trial ultimately showed. *Id.* at 565, 165 P.3d at 279. However, courts may consider information other than what is contained in the charging documents to determine whether joinder is proper under I.C.R. 8. *Field*, 144 Idaho at 565 n.3, 165 P.3d at 279 n.3 (Two or more offenses may be joined in a single charging document in two circumstances. First, the charges may be joined if the charges are based "on the same act or transaction[.]" I.C.R. 8. Second, the charges may be joined if the

charges are based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *Id.* Here, the State alleges that the two charged offenses constituted a common scheme or plan.

Under the common scheme or plan theory, "at a minimum, there must be evidence of a common scheme or plan beyond the bare fact that sexual misconduct has occurred with children in the past." *State v. Johnson*, 148 Idaho 664, 668, 227 P.3d 918, 922 (2010). "The events must be linked by common characteristics that go beyond merely showing a criminal propensity and instead must objectively tend to establish that the same person committed all the acts." *Id.* (citation omitted). Essentially, "a common scheme or plan embracing the commission of two or more crimes *so related to each other* that proof of one tends to establish the other." *Id.* (italics in original) (quotation omitted).

There are three Idaho Supreme Court cases relevant to the inquiry into whether various sexual abuse charges are sufficiently similar to constitute evidence of a common scheme or plan. First, in *State v. Schwartzmiller*, 107 Idaho 89, 685 P.2d 830 (1984), this Court held that the district court properly joined the charges of sexual abuse. *Id.* at 93, 685 P.2d at 834. The Court held that the similar facts demonstrated a "common plan, in that Schwartzmiller frequents areas where young boys may be found, befriends boys with no father figure in the home, entices them from their homes, lowers their natural inhibitions through the use of drugs and alcohol, and commits sex acts upon them." *Id.*

Then, in *Field*, this Court held that the facts alleged by the State were insufficient to demonstrate a common scheme or plan. 144 Idaho at 566–67, 165 P.3d at 280–81. The district court granted the State's motion to join a charge of lewd conduct against a seven-year-old victim with a charge of sexual battery against a seventeen-year-old victim. *Id.* at 563–64, 165 P.3d at 277–78. This Court rejected the State's argument that the two charges were connected as a common scheme or plan. *Id.* at 566, 165 P.3d at 280. This Court found it significant that the victims were different ages, the type of sexual contact was different, and the incidents occurred more than two years apart. *Id.* Further, the Court reasoned, "[t]here is nothing to show that at the time Field committed the offense against T.B. he had a plan to also commit an offense against H.P." *Id.* In conclusion, the Court stated that the only similarities were "that both girls were only temporarily in the household, that the acts occurred in Field's home, and that the abuse began

9

with 'innocent' touching[.]" *Id.* Consequently, we held there that joinder of the offenses was erroneous. *Id.* at 566–67, 165 P.3d at 280–81.

Finally, in *Johnson*, this Court again held that the facts alleged by the State were insufficient to demonstrate a common scheme or plan. 148 Idaho at 669, 227 P.3d at 923. In that case, Johnson was charged with abusing his young daughter. *Id.* at 666, 227 P.3d at 920. Although the case involved a determination under Rule 404(b), it is instructive as to what this Court has previously found to be insufficient to demonstrate a common scheme or plan.[6] During trial, the district court admitted evidence of the defendant's previous, uncharged sexual conduct with his sister when he was between fifteen and sixteen because "(1) both victims were about seven to eight years old; (2) both victims viewed Johnson as an 'authority figure' because he was an older brother or father; (3) both courses of conduct involved Johnson requesting the victim to touch his penis." *Id.* at 669, 227 P.3d at 923. This Court held that "[t]hese similarities, however, are sadly far too unremarkable to demonstrate a common scheme or plan in Johnson's behavior. The facts that the two victims in this case are juvenile females and that Johnson is a family member are precisely what make these incidents unfortunately quite ordinary." *Id.* (internal quotation marks omitted).

It is a difficult burden for the State to establish that the similarities between two charges demonstrate a common scheme or plan when it comes to sexual abuse crimes. As this Court stated in *Grist*, 147 Idaho at 55, 205 P.3d at 1191, "[w]e once again caution the trial courts of this state that they must carefully examine evidence offered for the purpose of demonstrating the existence of a common scheme or plan in order to the [sic] determine whether the requisite relationship exists."

Here, the State alleged, and the district court found, the following similarities: (1) the assaults occurred in the same room of the same house; (2) the assaults occurred within one or two days of each other; (3) both victims were twelve-year-old girls; (4) they were both asleep when the assaults occurred; (5) there were other young children sleeping in the room at the time; and (6) Nava had been grooming both girls. The district court concluded that these similarities

---

[6] Idaho Rule of Evidence 404(b) does not expressly authorize the admission of evidence to show a "common scheme or plan." Rather, the phrase is used as a term of art when referring to "preparation, plan, knowledge, [and] identity." *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009) (alteration in original); *State v. Marks*, 156 Idaho 559, 565 n.2, 328 P.3d 539, 545 n.2 (Ct. App. 2014) (observing that the phrase is "used as legal shorthand").

were sufficient to constitute a common scheme or plan. We agree that these facts present sufficient common characteristics to constitute a common scheme or plan.

Unlike the acts in *Field* or *Johnson* in which there were months or years between the assaults, the assaults in this case occurred within one or two days of each other. Additionally, both assaults occurred in the early morning hours. The assaults occurred in the same room of the same house. While it is true that we have previously found the fact of a similar location to be insufficient, the facts of this case present a unique set of circumstances. Here, there were several young children sleeping in the room where Nava assaulted the two girls. Nava passed over other children of various ages specifically to target J.R.R. and J.L.R. This would demonstrate a common scheme or plan connecting the two charges.

Further, the State's evidence suggests that Nava's actions constituted "grooming" behavior. "'[G]rooming' is conduct intended to foster trust and remove defenses over time through a pattern of seduction and preparation, resulting in the child being willing and compliant to the defendant's sexual abuse." *State v. Coleman*, 152 Idaho 872, 877, 276 P.3d 744, 749 (Ct. App. 2012). Here, during the hearing on the motion to sever, the State asserted that Nava had been grooming the two girls. First, the State argued that it intended to present evidence that Nava made a number of inappropriate comments regarding the girls' physical appearances. He started with comments such as telling the girls he thought they looked beautiful. Those comments continued with Nava telling the girls he thought they were attractive. Additionally, the State alleged that Nava would buy the girls drinks from a local coffee shop or treats from the gas station, but would not buy anything for the other children. This evidence suggests that Nava intended to foster trust and lower the girls' defenses. This type of grooming behavior, paired with the other characteristics, is sufficient to constitute a common scheme or plan.

As a result, the district court did not err in concluding that joinder was proper pursuant to I.C.R. 8.

## C. The district court did not abuse its discretion in denying Nava's motion to sever because joinder did not prejudice Nava.

Having found that joinder was proper, we turn to whether the joinder prejudiced Nava as to justify severing the two charges. As noted above, in analyzing whether joinder is prejudicial, Idaho courts have considered three potential sources of prejudice when considering a motion to sever based on I.C.R. 14:

11

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

*Williams*, 163 Idaho at 293, 411 P.3d at 1194 (citation omitted).

Here, the State argues that the joinder of the two charges was not prejudicial because the evidence of the assault against one girl would be admissible in the separate trial for the assault of the other girl. Nava additionally asserts that he had a separate defense relating to J.R.R. Nava contends that J.R.R.'s allegation may have been tainted by hearing the allegation from J.L.R. Each of these arguments will be discussed in turn.

1.  The district court did not abuse its discretion in determining that the evidence of the assaults would be admissible in separate trials.

It is well established that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b)(1). However, evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." I.R.E. 404(b)(2).

Admissibility of evidence pursuant to Rule 404(b) requires the trial court to engage in a two-tiered analysis. *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (citations omitted). The first tier has two steps. *Id.* "First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact." *Id.* (citation omitted). Second, the trial court must determine whether the evidence of the other act would be relevant to a "material and disputed issue concerning the crime charged, other than propensity." *Id.* (citation omitted). This relevancy determination is reviewed *de novo*. *Field*, 144 Idaho at 569, 165 P.3d at 283. The second tier requires the district court to engage in a balancing test pursuant to Rule 403. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. This balancing test is reviewed under the abuse of discretion standard. *Id.*

Here, the State asserts that the evidence would have been admissible under Rule 404(b) as evidence of a common scheme or plan. Under *Grist*, evidence is relevant for a non-propensity purpose if it is to prove "a common scheme or plan embracing the commission of two or more crimes *so related to each other* that proof of one tends to establish the other, knowledge, identity, or absence of mistake or accident." *Grist*, 147 Idaho at 54–55, 205 P.3d t 1190–91 (italics in

12

original) (quotation omitted). As established above, the two charges share significant common characteristics that are so related that the charges constitute a common scheme or plan. Therefore, the evidence was relevant for I.R.E. 404(b) purposes.

However, finding the evidence relevant does not end the analysis. Under the second part of the *Grist* analysis, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *see also* I.R.E. 403. While it is true that additional allegations of sex crimes carry significant prejudicial risk, here the prejudicial risk does not outweigh the probative value of this evidence. The two charges are so related to each other, that the probative value of the other assault is high. Therefore, the district court did not abuse its discretion in determining that the evidence would have been admissible in separate trials.

2. The district court did not abuse its discretion in concluding that joinder was not prejudicial due to a separate defense for one of the charges.

The district court noted some concern that Nava might have a separate defense as to J.R.R. because she only came forward after hearing about allegations from J.L.R. She stated that she originally thought she had been dreaming. The fact a defendant may be confounded in presenting defenses with respect to one charge and not the other charge is a legitimate concern under I.C.R. 14 for prejudicial joinder. I.C.R. 14; *Williams*, 163 Idaho at 293, 411 P.3d at 1194 (citation omitted).

We hold that the district court did not abuse its discretion in concluding that Nava was not prejudiced by the joint trial. There is nothing that would preclude Nava from presenting his defense that J.R.R.'s allegation may have been tainted by J.L.R. In fact, such a defense logically requires evidence of the other allegation be admitted in order to give context for the defense that the second allegation was tainted. Accordingly, the district court did not abuse its discretion.

### III. CONCLUSION

For the foregoing reasons, this Court affirms Nava's judgment of conviction.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.