**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50316**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 19, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| KENNETH TERREL MCDERMOTT, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Javier L. Gabiola, District Judge.

Judgment of conviction for two counts of lewd conduct with a child under sixteen, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Kenneth Terrel McDermott appeals from his judgment of conviction for two counts of lewd conduct with a child under sixteen. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

McDermott was charged in the same information with two counts of lewd conduct with a child under the age of sixteen. Count one alleged that, on December 1, 2019, McDermott had manual-to-genital contact with C.M., who was fifteen years old. Count two alleged that, on June 26, 2020, McDermott had manual-to-genital contact with A.M., who was fourteen years old. The victims were McDermott's stepdaughters. Before trial, McDermott filed a motion to sever the charges pursuant to I.C.R. 8(a) and I.C.R. 14, arguing that the facts alleged in the two cases

1

were not sufficiently similar to demonstrate a common scheme or plan and that he was prejudiced by their joinder. The district court denied the motion. The case proceeded to trial and a jury found McDermott guilty of both counts. McDermott appeals.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 8(a) authorizes charging two or more offenses by the same defendant in a single indictment or information if the offenses "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Idaho Criminal Rule 14 allows relief from prejudicial joinder "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or defendants in a complaint, indictment or information." Whether a court improperly joined offenses pursuant to I.C.R 8(a) is a question of law over which this Court exercises free review. *State v. Field*, 144 Idaho 559, 564, 165 P.3d 273, 278 (2007). In contrast, an abuse of discretion standard is applied when reviewing the denial of a motion to sever joinder pursuant to I.C.R. 14; however, that rule presumes joinder was proper in the first place. *Id.* When an appellant challenges both propriety of joinder and denial of a motion to sever, we first analyze whether joinder was permissible under I.C.R. 8. We exercise free review over this determination. If joinder is determined to be proper, we then turn to whether joinder was prejudicial under I.C.R. 14. We review that determination for an abuse of discretion. *State v. Nava*, 166 Idaho 884, 900, 465 P.3d 1123, 1129 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

### A. Joinder (I.C.R. 8)

Whether joinder under I.C.R 8(a) is proper is determined by what is alleged, not by what the proof eventually shows. *Field*, 144 Idaho at 565, 165 P.3d at 279. However, a charging document may not contain all the facts necessary for deciding whether joinder complies with

2

I.C.R. 8 and it may be necessary for a reviewing court to consider information outside the charging document. *Nava*, 166 Idaho at 891, 465 P.3d at 1130; *Field*, 144 Idaho at 565 n.3, 165 P.3d at 279 n.3. In a written order, the district court summarized the facts in this case as follows:[1]

> On June 28, 2020, the father of C.M. and A.M. reported to the Pocatello Police Department that [McDermott] had inappropriately touched both C.M. and A.M. Subsequent thereto, on July 7, 2020, at Bright Tomorrows, both C.M. and A.M were interviewed. During the interview of C.M., she reported that on December 1, 2019, while she was laying across [McDermott's] lap, she asked him if he would rub her hips as they were bothering her. At the time, C.M. was wearing spandex shorts and no underwear. During the massage, C.M. alleges that [McDermott] put his hands down her spandex shorts and touched her vagina. Further, at the time of the incident, C.M. was 15 years old.
>
> During A.M.'s interview at Bright Tomorrows, A.M. reported that on June 26, 2020, as a birthday present, she asked [McDermott] if he would give her a massage. A.M. was 14 at the time. According to A.M., [McDermott] told her that in order to give her a "professional" massage, she would have to remove all of her clothes, as he was going to use oil for the massage and did not want to stain her clothes. When A.M. put on a towel, [McDermott] reportedly said to her, "What, you don't want [me to see you] naked? You've already seen me naked." During the massage, [McDermott] applied oil to A.M.'s body, and rubbed her buttocks, hips, and legs. Then, after A.M. turned over, [McDermott] rubbed her breasts and her vagina. At the conclusion of the massage, [McDermott] told A.M.: "You are beautiful, don't let anyone tell you any different."
>
> The next day, A.M. texted C.M. about what happened. C.M. told A.M. that [McDermott] had inappropriately touched her as well and that they needed to report it to their mother, [Rose]. After A.M. told [Rose] what happened, [Rose] confronted [McDermott]. [Rose] asked [McDermott] if [she] should believe [McDermott] or A.M., and [McDermott] responded that [Rose] should believe A.M. At the time the alleged conduct occurred, [McDermott] was married to [Rose] and was C.M.'s and A.M.'s step-father. Also, at the time of the alleged events, both C.M. and A.M. resided in the same house as [McDermott]. Additionally, at the time the alleged conduct occurred, [McDermott] claimed to have skills in massage and had a relative who was a chiropractor. The State alleges that [McDermott], prior to the events on December 1, 2019 and June 28, 2020, had given adjustments to [Rose], C.M. and A.M.

In ruling that joinder was proper, the district court found:

Here, the conduct occurred in the same house where [McDermott] and the minor girls resided; both girls were close in age (14-15); the conduct occurred close in time, within 6 months of one another; both girls were step-daughters of

---

[1]     The facts summarized by the district court are consistent with the facts alleged in the charging document, the State's motion to sever, and the affidavit of probable cause.

[McDermott]; [McDermott] held himself out as a person who had massage skills; prior to the alleged events, [McDermott] had given adjustments to the girls; and, [McDermott] used that as a guise to gain sexual access to the girls. These facts present sufficient common characteristics to constitute a common scheme or plan, such that joinder is proper under Rule 8(a).

The district court also found that McDermott's conduct constituted grooming behavior[2] because McDermott had used his massage skills to gain access to the girls and had told one of the girls that she had a "nice body" and the other, "You are beautiful, don't let anyone tell you different."

McDermott argues that the charges against him do not meet the common scheme or plan requirement of I.C.R. 8. In *Nava*, the Idaho Supreme Court acknowledged that it is a "difficult burden for the State to establish that the similarities between two charges demonstrate a common scheme or plan when it comes to sexual abuse crimes" and held:

> Under the common scheme or plan theory, "at a minimum, there must be evidence of a common scheme or plan beyond the mere fact that sexual misconduct has occurred with children in the past." *State v. Johnson*, 148 Idaho 664, 668, 227 P.3d 918, 922 (2010). "The events must be linked by common characteristics that go beyond merely showing a criminal propensity and instead must objectively tend to establish that the same person committed all the acts." *Id.* (citation omitted). Essentially, "a common scheme or plan embracing the commission of two or more crimes *so related to each other* that proof of one tends to establish the other. *Id.*

*Nava*, 166 Idaho at 891, 465 P.3d at 1130.

In *Nava*, the Supreme Court stated that there are three cases relevant to the inquiry into whether various sexual abuse charges are sufficiently similar to constitute evidence of a common scheme or plan. First, the Court cited *State v. Schwartzmiller*, 107 Idaho 89, 685 P.2d 830 (1984), a case in which a common scheme or plan is obvious. Schwartzmiller was charged with three counts of lewd and lascivious conduct with two fourteen-year-old boys. Schwartzmiller would frequent areas where young boys were found, befriend boys with no father figure at home, entice them from their homes, lower their natural inhibitions through the use of drugs and alcohol and then commit sex acts upon them. *Id*. at 93, 685 P.2d at 834. This conduct was held sufficient to show a common scheme or plan. On the other hand, in *Field*, 144 Idaho at 566, 165 P.3d at 280,

---

[2]	Grooming is conduct intended to foster trust and remove defenses over time through a pattern of seduction and preparation, resulting in the child being willing and compliant to the defendant's sexual abuse. *Nava*, 166 Idaho at 892, 465 P.3d at 1131; *State v. Coleman*, 152 Idaho 872, 877, 276 P.3d 744, 749 (Ct. App. 2012).

joinder of a charge of lewd conduct with a child under the age of sixteen (involving a seven-year-old victim) and sexual battery of a minor child (involving a seventeen-year-old victim) where the type of sexual conduct was different and the incidents occurred two years apart, was held to be erroneous. In that case, the Court stated that the only similarities were "that both girls were only temporarily in the household, that the acts occurred in Field's home, and that the abuse began with 'innocent' touching." *Id.* In the third case cited by the Court, *State v Johnson*, 148 Idaho 664, 227 P.3d 918 (2010),[3] the defendant was charged with sexually abusing his young daughter. The district court admitted evidence of the defendant's prior uncharged sexual conduct with his sister when the defendant was between fifteen and sixteen years old because: "(1) both victims were about seven to eight years old; (2) both victims viewed Johnson as an 'authority figure' because he was an older brother or a father; [and] (3) both courses of conduct involved Johnson asking the victim to touch his penis." *Id.* at 669, 227 P.3d at 923. The Court held that "these similarities, however, are sadly far too unremarkable to demonstrate a common scheme or plan in Johnson's behavior. The facts that the two victims in this case are juvenile females and that Johnson is a family member are precisely what make these incidents unfortunately quite ordinary." *Id.* (internal quotation marks omitted).

In *Nava*, the defendant inappropriately touched two twelve-year-old girls, one or two nights apart within a 48-hour period, in the same room, in the same house, and while both girls were initially asleep. There were other young children sleeping in the room at the same time. The Court held:

> Unlike the acts in *Field* or *Johnson* in which there were months or years between the assaults, the assaults in this case occurred within one or two days of each other. Additionally, both assaults occurred in the early morning hours. The assaults occurred in the same room of the same house. While it is true that we have previously found the fact of a similar location to be insufficient, the facts of this case present a unique set of circumstances. Here, there were several young children sleeping in the room where Nava assaulted the two girls. Nava passed over other children of various ages specifically to target [the two victims]. This would demonstrate a common scheme or plan connecting the two charges.

---

[3]     Although *Johnson* involved a determination under I.R.E 404(b), the Supreme Court noted that the case was instructive as to what the Court has previously found to be insufficient to demonstrate a common scheme or plan.

*Nava*, 166 Idaho at 892, 465 P.3d at 1131. The Supreme Court also observed that Nava had previously engaged in grooming behavior with the girls, starting with telling the girls he thought they looked beautiful, and buying treats for the girls but not for the other children. The Court held that this grooming behavior, coupled with the other characteristics, was sufficient to constitute a common scheme or plan. *Id.* at 893, 465 P.3d at 1132.

The State maintains that the offenses committed by McDermott against his two stepdaughters had sufficient common elements to constitute a common scheme or plan. The State's allegations include the following: the conduct occurred in the same house where McDermott and the two girls resided; both girls were close in age (fourteen and fifteen); and, the two instances occurred within a period of six months. These allegations alone would not be sufficient to support joinder under a common scheme or plan because, as was the case in *Johnson*, they are unremarkable. What sets this case apart from *Johnson* and *Field* is that McDermott held himself out as someone who was skilled in giving massages and claimed that he had a relative who was a chiropractor. Based on this, he had provided "adjustments" or massages to his wife and, on occasion, his stepdaughters. On one occasion while giving one of his stepdaughters a massage, he put his hand under her spandex shorts and touched her vagina. Then, six months later when his other stepdaughter asked for a massage for her birthday, he told her he could not give a "professional" massage unless she was naked. After she complied, he touched her buttocks, breasts, and vagina. Additionally, McDermott told one of the girls that she had a "nice body" and the other, "You are beautiful, don't let anyone tell you different." The prior massages and McDermott's remarks to the girls about their bodies constituted grooming behavior. Applying a free standard of review, we conclude, based upon the foregoing facts, that McDermott's conduct was relevant to prove an issue other than propensity because it demonstrated a common scheme or plan as well as intent. Joinder of the two cases was, therefore, proper under I.C.R 8(a).

## B.     Prejudice (I.C.R. 14)

McDermott argues that, even if joinder was proper under I.C.R 8(a), he was prejudiced by the charges being tried together. Idaho Criminal Rule 14 provides that, "if it appears that a defendant or the state is prejudiced by a joinder of offenses . . . the court may order the state to elect between counts, grant separate trials of counts . . . or provide whatever other relief justice requires." The inquiry on appeal from the denial of a motion to sever is whether the defendant has

presented facts demonstrating that unfair prejudice resulted from a joint trial. *State v. Anderson*, 168 Idaho 758, 767, 487 P.3d 350, 359 (2021). Unlike the decision to join cases under I.C.R. 8(a), a trial court's decision to deny a motion to sever under I.C.R. 14 is reviewed for abuse of discretion.

Idaho appellate courts have recognized three potential sources of prejudice: (1) the jury may confuse and cumulate the evidence, rather than keeping the evidence properly segregated; (2) the defendant may be confounded in presenting defenses; and (3) the jury may conclude the defendant is guilty of one crime and then find the defendant guilty of the other crimes because of criminal disposition. *See State v. Williams*, 163 Idaho 285, 293, 411 P.3d 1186, 1194 (Ct. App. 2018). McDermott asserts that trying the cases together could have improperly resulted in a conviction based on the highly charged nature of the charges, there were two different accusers, and/or his criminal disposition.

The district court, citing *Nava*, recognized that, in weighing prejudice under I.C.R 14, the trial court conducts a balancing test similar to that required by I.R.E. 403. The district court recognized that additional allegations of sex crimes carry significant prejudicial risk but found that the risk of prejudice in this case did not outweigh the probative value of the evidence because, as in *Nava*, the two charges are so related to each other that the probative value of the other is high. The district court also found that McDermott would not be prejudiced in maintaining any defenses he had to either charge if they were both tried together.

In balancing the risk of prejudice, the district court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, acted consistently with the legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. Thus, the district court did not err in its determination that joinder severance was not required under I.C.R. 14.

## IV.

## CONCLUSION

McDermott has failed to show error either that joinder was improper or that severance was required. Therefore, his judgment of conviction for two counts of lewd conduct with a child under sixteen is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.